******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* PATRICIA DANIELS
## (AC 40321)

Lavine, Bright and Bear, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of, inter alia, reckless manslaughter in the first degree and misconduct with a motor vehicle, which involves the criminally negligent operation of a motor vehicle, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which her vehicle hit the victim's vehicle, causing it to hit a tree, which resulted in the victim's death. The jury also had found the defendant guilty of intentional manslaughter in the first degree, but the court vacated her conviction of that charge at sentencing. On appeal, the defendant claimed that the jury's verdicts were legally inconsistent in that each of the alleged crimes required a mutually exclusive mental state and that the trial court erred when it failed to exclude certain testimonial hearsay. *Held*:

1. The defendant could not prevail on her claim that the jury's guilty verdicts on the charges of intentional and reckless manslaughter were legally inconsistent because they required findings that the defendant simultaneously acted intentionally and recklessly with respect to one act and one alleged victim; in finding the defendant guilty of both intentional and reckless manslaughter, the jury reasonably could have found that the defendant specifically intended to cause serious physical injury to the victim, which satisfied the mental state required for intentional manslaughter, and that, in doing so, she consciously disregarded a substantial and unjustifiable risk that her actions created a grave risk of death to the victim, which satisfied the mental state required for reckless manslaughter, and, therefore, because the guilty verdicts on the charges of intentional and reckless manslaughter required findings that the defendant simultaneously acted intentionally and recklessly with respect to different results, the verdicts were not legally inconsistent.

2. The defendant could not prevail on her claim that the mental states required for the crimes of intentional manslaughter and criminally negligent operation of a motor vehicle were mutually exclusive and that the guilty verdicts on those charges were legally inconsistent, as the mental states required for each crime were not mutually exclusive; the defendant could have intended to cause serious physical injury to the victim, as required for intentional manslaughter, while, at the same time, failing to perceive a substantial and unjustifiable risk that the manner in which she operated her vehicle would cause the victim's death, as required for criminally negligent operation of a motor vehicle, and, thus, the mental state elements for each crime did not relate to the same result.

3. The jury's guilty verdicts as to the crimes of reckless manslaughter and criminally negligent operation of a motor vehicle were legally inconsistent: although the state claimed on appeal that the jury could have viewed the defendant's two strikes of the victim's vehicle each as separate acts, it never made that argument to the jury and, instead, argued that the strikes constituted one continuous act, and, thus, it was bound by the theory it had presented to the jury, and the mental state element for each crime was mutually exclusive when examined under the facts and theory of the state argued at trial, as the defendant could not have consciously disregarded a substantial and unjustifiable risk that her actions would cause the victim's death, as required for reckless manslaughter, while simultaneously failing to perceive a substantial and unjustifiable risk that her actions would cause the victim's death, as required for criminally negligent operation of a motor vehicle; accordingly, because the mental state elements for each crime related to the same result, the verdicts were legally inconsistent, and a new trial on those charges was necessary; furthermore, this court declined the state's request to reinstate the intentional manslaughter conviction but, rather, consistent with the defendant's request for a retrial on the three charges of intentional and reckless manslaughter, and criminally negligent operation of a motor vehicle, the case was remanded for a new trial on

those charges.

4. The defendant's unpreserved claim that the trial court erred when it failed to exclude certain testimonial hearsay was not reviewable, as it failed under the second prong of *State* v. *Golding* (213 Conn. 233) in that the admission of an out-of-court statement for purposes other than its truth raised no confrontation clause issue and was not of a constitutional magnitude; the statement at issue—that a vehicle in photographs obtained by the police was a certain newer model—was not hearsay because it was not offered for the truth of the matter asserted, that the vehicle was a certain newer model but, rather, was offered to show its effect on the listener, a police officer, and to demonstrate the route that the police took in deciding to obtain a list of certain vehicles and in conducting their investigation, which included investigating fifteen model years of two vehicle models and not just a certain newer model.

Argued March 4—officially released July 2, 2019

*Procedural History*

Substitute information charging the defendant with two counts of the crime of manslaughter in the first degree, and with the crimes of misconduct with a motor vehicle, risk of injury to a child, and evasion of responsibility in the operation of a motor vehicle, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Kavanewsky, J.*; verdict and judgment of guilty; thereafter, the court vacated the conviction as to one count of manslaughter in the first degree, and the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Laila M. G. Haswell*, senior assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Marc R. Durso*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The defendant, Patricia Daniels, appeals from the judgment of conviction, rendered by the trial court following a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) (reckless manslaughter) and misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a) (criminally negligent operation).[1] The defendant also had been convicted of manslaughter in the first degree in violation of § 53a-55 (a) (1) (intentional manslaughter), but at sentencing the trial court vacated her conviction of that charge. On appeal, the defendant claims that (1) the jury's verdict was legally inconsistent because each of these crimes requires a mutually exclusive mental state, and (2) the court erred in failing to exclude testimonial hearsay. We agree that the verdict is legally inconsistent, and, therefore, we reverse in part the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, are relevant to this appeal. The victim, Evelyn Agyei, left her Bridgeport home at approximately 6 a.m. on December 4, 2014. Her eleven year old son accompanied her. Agyei and her son got into her Subaru Outback (Subaru), Agyei driving and her son in the back seat on the passenger's side. After traversing some back roads, they took Bond Street and arrived at the intersection of Bond Street and Boston Avenue. Agyei stopped at the red light and then proceeded to make a right turn onto Boston Avenue, staying in the right lane. As she was making the right turn, her son looked to the left and saw a white BMW sport utility vehicle (BMW) approximately two streets down, traveling at a high rate of speed in the left lane.

After Agyei got onto Boston Avenue, the driver of the BMW pulled alongside Agyei's vehicle. Agyei's son saw the BMW logo on the hood; however, he could not see the driver or the license plate. The driver of the BMW then moved into the right lane, hitting Agyei's Subaru once on the driver's side and causing her to begin to lose control of the vehicle. The driver of the BMW then moved behind the Subaru and ran into it from behind, causing the vehicle to cross the median, proceed under a fence, and hit a tree. Tragically, Agyei died from her injuries, and her son, who also was injured, continues to have vision problems as a result of the injuries he sustained.

After an investigation, which included obtaining a video of the incident from a nearby high school that had surveillance cameras in the area, the police, having concluded that the defendant was the driver of the BMW that hit the Subaru, causing Agyei's death and the injuries to Agyei's son, arrested the defendant.[2] Ultimately, she was charged, in a long form information, with, inter alia, intentional manslaughter, reckless man-

slaughter, and criminally negligent operation of a motor vehicle; the jury found her guilty of these charges, among others. See footnote 1 of this opinion. The court accepted the jury's verdicts and rendered judgment accordingly. On the date of sentencing, upon the request of the state,[3] the court vacated the defendant's conviction of intentional manslaughter, and it, thereafter, sentenced the defendant to twenty years incarceration, execution suspended after sixteen years, with five years of probation.[4] The defendant raises two claims on appeal—(1) the jury's verdicts of guilty on the crimes of intentional and reckless manslaughter and criminally negligent operation were legally inconsistent because each of these crimes requires a mutually exclusive mental state, and (2) the court erred in failing to exclude testimonial hearsay—and requests that we reverse the judgment of the trial court and order a new trial on all charges and, alternatively, on the charges of intentional manslaughter, reckless manslaughter, and criminally negligent operation. Additional facts will be set forth as necessary.

I

INCONSISTENT VERDICTS

The defendant first claims that the jury's verdicts on the counts of intentional manslaughter, reckless manslaughter, and criminally negligent operation were legally inconsistent because they each require a mutually exclusive mental state.[5] She argues that it was logically impossible for the defendant to have possessed three forms of intent, simultaneously, for a single act, involving a single victim. The defendant explains that, at trial, the state's theory of the case was that her action in twice hitting Agyei's vehicle was one single act, which caused Agyei's death. She argues that the state tried the case under the theory that each of the three relevant counts of the information were charged in the alternative, one being intentional, one reckless, and one negligent. She contends that the fact that the jury found her guilty of all three charges, each requiring a different mental state, and that the state, thereafter, requested that the court vacate the intentional manslaughter conviction, demonstrates that the verdicts were legally inconsistent. After setting forth our standard of review and the general legal principles involved, we will consider the relevant mental element of each of these crimes in order to ascertain whether convictions of all three crimes would be legally inconsistent.

"It is well established that *factually* inconsistent verdicts are permissible. [When] the verdict could have been the result of compromise or mistake, we will not probe into the logic or reasoning of the jury's deliberations or open the door to interminable speculation. . . . Thus, claims of legal inconsistency between a conviction and an acquittal are not reviewable [on appeal]. . . . We employ a less limited approach, however,

when we are confronted with an argument that [two or more convictions] are inconsistent as a matter of law or when the [convictions] are based on a legal impossibility. . . . A claim of legally inconsistent convictions, also referred to as mutually exclusive convictions, arises when a conviction of one offense requires a finding that negates an essential element of another offense of which the defendant also has been convicted. . . . In response to such a claim, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of [one or more] essential elements for another offense of which the defendant also stands convicted. If that is the case, the [convictions] are legally inconsistent and cannot withstand challenge. . . . Whether two convictions are mutually exclusive presents a question of law, over which our review is plenary." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Nash*, 316 Conn. 651, 659, 114 A.3d 128 (2015).

"[C]ourts reviewing a claim of legal inconsistency must closely examine the record to determine whether there is any plausible theory under which the jury reasonably could have found the defendant guilty of [more than one offense]." Id., 663. Nevertheless, the state is bound by the theory it presented to the jury. See *State* v. *Chyung*, 325 Conn. 236, 255–56, 157 A.3d 628 (2017) (where state argued defendant engaged in only one act, rather than two, principles of due process prohibited state from relying on different theory on appeal).

A

Intentional Manslaughter and Reckless Manslaughter

We first consider whether the charges of intentional manslaughter and reckless manslaughter were legally inconsistent under the facts of this case and in view of the state's theory.[6] We conclude that they were not legally inconsistent because the mental state element for each of these crimes related to different results.

The following additional facts and procedural history inform our review. As set forth previously in this opinion, the state charged the defendant with, inter alia, intentional manslaughter and reckless manslaughter. As to intentional manslaughter, the state charged in relevant part that, "on or about the 4th day of December, 2014, at approximately 6:30 a.m., at or near Boston Avenue within [Bridgeport] . . . PATRICIA DANIELS, with the intent to cause serious physical injury to another person, caused the death of EVELYN AGYEI, in violation of [§] 53a-55 (a) (1) . . . ."

As to reckless manslaughter, the state charged in relevant part that, "on or about the 4th day of December, 2014, at approximately 6:30 a.m., at or near Boston Avenue within [Bridgeport] . . . PATRICIA DANIELS, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct which

created a grave risk of death to one EVELYN AGYEI, and thereby caused the death of . . . EVELYN AGYEI, in violation of [§] 53a-55 (a) (3) . . . ."

During closing and rebuttal argument, the state specifically argued to the jury: "[The defendant] knowingly and recklessly got behind the wheel of her BMW; she intentionally rammed that car off the road. And, by the way, if you don't believe it was intentional, she recklessly ran that vehicle off the road." It also argued: "We've proven beyond a reasonable doubt, based on the video of that white BMW ramming, the intentional ramming into Evelyn Agyei's car. That's intentional conduct. But intent is a question of fact for you to decide. The state recognizes that because, if you disagree that it was intentional, we also submit and argue in the alternative . . . that that conduct was, at the very least, reckless. She had a reckless disregard for Evelyn Agyei's life . . . ."[7]

Although the state clearly contended that these crimes were charged in the alternative, neither it nor the defendant requested that the court specifically instruct the jury to consider each charge in the alternative. To be clear, the defendant has not claimed on appeal that the state's argument that the jury should consider the charges in the alternative, itself, precluded the jury from finding her guilty of both charges; rather, her argument is that because each of the charges required a mutually exclusive mental state, the jury was precluded from finding guilt on both charges because one intent negates the other. The defendant argues that the guilty verdicts on the counts of intentional manslaughter and reckless manslaughter were legally inconsistent because she could not have engaged in both intentional and reckless conduct simultaneously, involving only one act and one alleged victim. She contends that it was legally impossible for the jury to have found every element of both crimes because, under the state's theory of the case, each of the charges required a mutually exclusive finding with respect to her mental state. We disagree.

Section 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

Pursuant to General Statutes § 53a-3 (11): "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." Additionally, pursuant to General Statutes § 53a-3 (13): "A person acts 'recklessly'

with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

In support of her claim that intentional manslaughter and reckless manslaughter require mutually exclusive mental states, the defendant relies, in part, on *State* v. *King*, 216 Conn. 585, 583 A.2d 896 (1990). In *Nash*, our Supreme Court discussed *King* at length and explained: In *King*, the defendant had "claimed that his convictions of attempt to commit murder and reckless assault of the same victim based on the same conduct were legally inconsistent because they required mutually exclusive findings with respect to his mental state. . . . We agreed with this claim, explaining that King's conviction for attempt to commit murder required the jury to find that he acted with the *intent to cause the death of the victim*, whereas his conviction for reckless assault required the jury to find that he *acted recklessly and thereby created a risk that the victim would die*. . . . We further explained that the statutory definitions of intentionally and recklessly are mutually exclusive and inconsistent. . . . Reckless conduct is not intentional conduct because [a person] who acts recklessly does not have a conscious objective to cause a particular result. . . . Thus, we observed that [t]he *intent to cause death required for a conviction of attempted murder* [under General Statutes §§ 53a-49 and 53a-54a (a)] . . . necessitated a finding that the defendant *acted with the conscious objective to cause death* . . . [whereas] [t]he *reckless conduct necessary to be found for a conviction of assault* under [General Statutes § 53a-59 (a) (3)] . . . required a finding that *the defendant acted without such a conscious objective*. . . . We concluded, therefore, that the jury verdicts [with respect to attempt to commit murder and reckless assault in the first degree] each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction cannot stand." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Nash*, supra, 316 Conn. 660–61.

The defendant also relies on *State* v. *Chyung*, 325 Conn. 236, 157 A.3d 628 (2017). In *Chyung*, the jury found the defendant guilty of murder, in violation of § 53a-54a, and of reckless manslaughter in the first degree with a firearm, in violation of General Statutes §§ 53a-55a (a) and 53a-55 (a) (3), for the shooting death of his wife. Id., 239, 239 n.1.

Section 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with *intent to cause the*

*death* of another person, he causes the death of such person . . . ." (Emphasis added.) Section 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a . . . firearm. . . ." As noted previously, § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, *he recklessly engages in conduct which creates a grave risk of death* to another person, and thereby causes the death of another person." (Emphasis added.)

The court in *Chyung* found that the jury's guilty verdicts as to both charges were legally inconsistent because the defendant could not act both intentionally and recklessly with respect to the same victim, the same act, and the same result simultaneously. *State* v. *Chyung*, supra, 325 Conn. 247–48. Our Supreme Court explained that to find the defendant guilty of the crime of intentional murder, the jury was required to find that the defendant had the *specific intent to kill the victim*, his wife, but, to find the defendant guilty of reckless manslaughter, the jury was required to find that he acted recklessly, meaning, that he *acted without a conscious objective to cause the death of the victim*, but consciously disregarded the risk of his actions, thereby putting the life of the victim in grave danger. Id., 246–48. The court concluded that a defendant cannot act with a *conscious disregard* that his actions will create *a grave risk of death* to another, while, at the same time, specifically *intending to kill* that person. Id. The "defendant cannot simultaneously act intentionally and recklessly with respect to the same act and the same result . . . ." Id., 247–48.

Although the defendant argues that both *King* and *Chyung* are controlling in this case, the state contends that the defendant's claim is governed by *State* v. *Nash*, supra, 316 Conn. 659–70. In *Nash*, the jury found the defendant guilty of, among other things, both intentional and reckless assault in the first degree pursuant to General Statutes § 53a-59 (a) (1) and (a) (3), respectively,[8] and the court rendered judgment in accordance with the jury's verdicts. Id., 656–57. On appeal, the defendant claimed in part that the jury's verdicts of guilty on both intentional and reckless assault were legally inconsistent because each crime required a mutually exclusive state of mind. Id., 657. Our Supreme Court disagreed, explaining that the two mental states required for intentional and reckless assault in the first degree *related to different results*. Id., 666. More specifically, the court explained, "in order to find the defendant guilty of [*both* intentional and reckless assault in

the first degree], the jury was required to find that *the defendant intended to injure another person and that, in doing so, he recklessly created a risk of that person's death*. In light of the state's theory of the case, there was nothing to preclude a finding that the defendant possessed both of these mental states with respect to the same victim at the same time by virtue of the same act or acts. In other words, the jury could have found that the defendant intended only to injure another person when he shot into [the victim's] bedroom but that, in doing so, he recklessly created a risk of that [victim's] death in light of the circumstances surrounding his firing of the gun into the dwelling. Accordingly, because the jury reasonably could have found that the defendant simultaneously possessed both mental states required to convict him of both intentional and reckless assault, he cannot prevail on his claim that the convictions were legally inconsistent." (Emphasis added; footnotes omitted.) Id., 666–68.

The court in *Nash* went on to examine and compare § 53a-59 (a) (1) and (3): "Intentional assault in the first degree in violation of § 53a-59 (a) (1) requires proof that the defendant (i) had the intent to cause serious physical injury to a person, (ii) caused serious physical injury to such person or to a third person, and (iii) caused such injury with a deadly weapon or dangerous instrument. Reckless assault in the first degree in violation of § 53a-59 (a) (3) requires proof that the defendant (i) acted under circumstances evincing an extreme indifference to human life, (ii) recklessly engaged in conduct that created a risk of death to another person, and (iii) caused serious physical injury to another person. As we previously explained, the mental state elements in the two provisions—'intent to cause serious physical injury' and 'recklessly engag[ing] in conduct which creates a risk of death'—do not relate to the same result. Moreover, under both provisions, the resulting serious physical injury is an element of the offenses that is separate and distinct from the mens rea requirements." Id., 668–69. The court then held: "Because the defendant's convictions for intentional and reckless assault in the first degree required the jury to find that the defendant acted intentionally and recklessly with respect to different results, the defendant cannot prevail on his claim that those convictions are mutually exclusive and, therefore, legally inconsistent.[9]" Id., 669.

The court in *Nash* provided an example of where a single act, directed to a single victim, could result in a conviction of both intentional and reckless assault in the first degree: "For example, if A shoots B in the arm intending only to injure B, A nevertheless may recklessly expose B to a risk of death if A's conduct also gave rise to an unreasonable risk that the bullet would strike B in the chest and thereby kill him. In such circumstances, a jury could find both that A intended to injure B and, in doing so, recklessly created an undue

risk of B's death." Id., 666 n.15. We conclude that the same analysis applies in the present case.[10]

Intentional manslaughter in violation of § 53a-55 (a) (1) requires proof that the defendant (i) had the *intent to cause serious physical injury* to a person, and (ii) caused the death of such person or of a third person. Reckless manslaughter in violation of § 53a-55 (a) (3) requires proof that the defendant (i) acted under circumstances evincing an extreme indifference to human life, (ii) *recklessly engaged in conduct that created a grave risk of death* to another person, and (iii) caused the death of another person. Guided by our Supreme Court's analysis in *Nash*, we conclude that the mens rea elements in the two provisions, namely, the "intent to cause serious physical injury" and "recklessly engag[ing] in conduct which creates a grave risk of death"; General Statutes § 53a-55 (a); do not relate to the same result. In finding the defendant guilty of both intentional and reckless manslaughter, the jury in the present case reasonably could have found that the defendant *specifically intended to cause serious physical injury to Agyei* and that, in doing so, she *consciously disregarded* a substantial and unjustifiable risk *that her actions created a grave risk of death to Agyei*. See *State v. Nash*, supra, 316 Conn. 666–67.

Because the jury's guilty verdicts on the charges of intentional and reckless manslaughter required findings that the defendant simultaneously acted intentionally and recklessly with respect to *different results*, we conclude that the defendant cannot prevail on her claim that the verdicts on those charges were legally inconsistent.

B

Intentional Manslaughter and Criminally Negligent Operation

The defendant also claims that the verdicts on the counts of intentional manslaughter and criminally negligent operation were legally inconsistent. We disagree.

As stated previously in this opinion: intentional manslaughter in violation of § 53a-55 (a) (1) requires proof that the defendant (i) had the *intent to cause serious physical injury* to a person, and (ii) caused the death of such person or of a third person.

Criminally negligent operation in violation of § 53a-57 (a) provides: "A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person." General Statutes § 53a-3 (14) provides that "[a] person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive

it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ." (Internal quotation marks omitted.) See *State* v. *Gonsalves*, 137 Conn. App. 237, 244, 47 A.3d 923, cert. denied, 307 Conn. 912, 53 A.3d 998 (2012).

"Under § 53a-57, the state was required to prove that the defendant was operating a motor vehicle, that [s]he caused the death of another person, and that [s]he *failed to perceive a substantial and unjustifiable risk that the manner in which [s]he operated [her] vehicle would cause that death*. The failure to perceive that risk must constitute a gross deviation from the standard of care that a reasonable person would observe in the situation. . . . Further, [t]o prove causation, the state is required to demonstrate that the defendant's conduct was a proximate cause of the victim's death—i.e., that the defendant's conduct contributed substantially and materially, in a direct manner, to the victim's injuries and that the defendant's conduct was not superseded by an efficient intervening cause that produced the injuries." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Jones*, 92 Conn. App. 1, 7–8, 882 A.2d 1277 (2005).

Considering the plain language of each statute, we are persuaded that, as in *Nash*; see part I A of this opinion; the mental state requirements for each statute are not mutually exclusive. One can *intend to cause serious physical injury to another*, while, at the same time, *failing to perceive a substantial and unjustifiable risk* that the manner in which she operated her vehicle would cause the victim's death. The mental state elements in the two provisions—*failing to perceive a substantial and unjustifiable risk that your manner of operation would cause death* and an *intent to cause serious physical injury*—do not relate to the same result. Because the defendant's convictions of intentional manslaughter and criminally negligent operation required the jury to find that the defendant acted intentionally and criminally negligent with respect to different results (*failing to perceive a substantial and unjustifiable risk of death* and *intending to cause serious physical injury*), the defendant cannot prevail on her claim that the mental states required for those crimes are mutually exclusive and, therefore, that the verdicts are legally inconsistent. See *State* v. *Nash*, supra, 316 Conn. 668–69.

C

Reckless Manslaughter and Criminally Negligent Operation

The defendant also claims that the jury's verdicts with respect to the crimes of reckless manslaughter and criminally negligent operation are legally inconsistent. The state argues on appeal that the jury could have viewed each strike of Agyei's vehicle as a separate act,

with a separate mental state. It conceded during oral argument before this court, however, that if we view both strikes of the collision as one act, the mental elements of these two counts are mutually exclusive. We are not persuaded by the state's argument that the jury could have viewed each strike as a separate act because the state never made such an argument to the jury; rather, it consistently argued that this was one continuous act. As our Supreme Court repeatedly has stated, the state is bound by the theory it presented to the jury; on appeal, it may not rely on a theory of the case that differs from the theory that was presented to the jury. See *State* v. *Chyung*, supra, 325 Conn. 256 ("[c]onstitutional [p]rinciples of due process do not allow the state, on appeal, to rely on a theory of the case that was never presented at trial" [internal quotation marks omitted]); *State* v. *King*, 321 Conn. 135, 149, 136 A.3d 1210 (2016) (same). We agree with the defendant that the state of mind element in each of these charges is mutually exclusive and, therefore, that the verdicts of guilty as to both of these charges were legally inconsistent.

For the defendant to be found guilty of reckless manslaughter, the state needed to prove that she *was aware of and consciously disregarded a substantial and unjustifiable risk* that her actions would create *a grave risk of death* to another person, namely Agyei. See General Statutes § 53a-55 (a) (3). For her to be found guilty of criminally negligent operation, the state needed to prove that she *failed to perceive a substantial and unjustifiable risk* that the manner in which she operated her vehicle *would cause Agyei's death.* See General Statutes § 53a-57; *State* v. *Jones*, supra, 92 Conn. App. 7–8. We conclude that the mental states required under these two provisions are mutually exclusive.

"The [penal] code . . . distinguishes reckless from criminally negligent conduct. A person acts *recklessly* if he is aware of and *consciously disregards* a substantial and unjustifiable risk, and acts with *criminal negligence* . . . when he *fails to perceive* a substantial and unjustifiable risk." (Emphasis altered; internal quotation marks omitted.) *State* v. *Bunkley*, 202 Conn 629, 639, 522 A.2d 795 (1987). In the Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-3 (West 2007), commission comments, the commission briefly explains the difference between reckless conduct and criminal negligence under our penal code. As to reckless conduct, the commission stated: "This concept, much like the concept of recklessness under the present reckless driving statute, requires *conscious disregard* of a substantial and unjustifiable risk. But this disregard must be a gross deviation from the standard of a reasonable man." (Emphasis added.) Commission to Revise the Criminal Statutes, Penal Code Comments, supra, § 53a-3, commission comment. As to criminal negligence, the commission

comments provide: "This concept involves a *failure to perceive* a substantial and unjustifiable risk. And, as in the concept of recklessness, the failure to perceive must be a gross deviation from the standard of a reasonable man; thus it requires a greater degree of culpability than the civil standard of negligence." (Emphasis added.) Id.

Considering the plain language of both §§ 53a-55 (a) (3) and 53a-57 (a), we are persuaded that the mental state element for each statute is mutually exclusive when examined under the facts and theory of the state in the present case. The defendant could not have *consciously disregarded* a substantial and unjustifiable risk that her actions would cause Agyei's death, while, simultaneously, *failing to perceive* a substantial and unjustifiable risk that her actions would cause Agyei's death. The mental state elements in the two provisions relate to the same result. Accordingly, the verdicts of guilty as to the crimes of reckless manslaughter and criminally negligent operation were legally inconsistent.

## II

## TESTIMONIAL HEARSAY

The defendant next claims that the court erred in failing to exclude testimonial hearsay. She argues that the testimony of now former Bridgeport Detective Paul Ortiz, relying on statements made by someone at the BMW dealership, amounted to testimonial hearsay. Because this claim was not preserved at trial, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015).[11] We conclude that the record is adequate for review, but that the claim is unreviewable under *Golding*'s second prong because it is not of constitutional magnitude. See *State* v. *Carpenter*, 275 Conn. 785, 820–21, 882 A.2d 604 (2005) (defendant's claim not reviewable under *Golding*'s second prong because admission of out-of-court statements for purposes other than their truth raises no confrontation clause issues), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

The following additional facts inform our analysis. As part of their investigation of the collision involving Agyei's vehicle, the police obtained a video of the incident from Harding High School, which had surveillance cameras in the area. The footage from the video showed a white sport utility vehicle (SUV) hitting a darker colored vehicle. Detective Arthur Calvao of the Bridgeport Police Department printed out several still photographs from certain relevant frames of the video, which depict a white SUV striking a dark colored vehicle from the side and then from the rear. Although the investigators were unable to identify the make and model of the white SUV from the video or the photographs, Ortiz, the lead detective on this matter, interviewed Agyei's son, who insisted that the vehicle that hit his mother's

vehicle was a white BMW.

One of the Bridgeport police detectives then went to a BMW dealership and showed the still photographs to personnel there, who identified the white SUV as a newer model BMW X3. The police, thereafter, obtained a list of the owners of all 2000-2014 BMW X3s and X5s registered in Connecticut from the Department of Motor Vehicles, and they began visiting the homes of the people on the list, asking to inspect their BMWs. If the vehicle had no damage, the police crossed it off their list. If the vehicle had front end damage, the police spoke further with the owner, and towed the vehicle to the police department for further inspection.

One of the vehicles examined by the police belonged to the defendant. Ortiz observed that the defendant's vehicle had damage to its front end that was consistent with the collision being investigated. The defendant admitted to Ortiz that she had driven west on Boston Avenue between 6 a.m. and 6:30 a.m. on December 4, 2014.[12] Ortiz then called for a tow truck, which took the defendant's BMW to the police department. The front bumper of the vehicle was sent to the state forensic laboratory for testing.

Alison Gingell, a forensic examiner at the state laboratory, performed testing on the bumper, and she compared a paint sample from Agyei's Subaru with a paint particle she found stuck on the bumper of the defendant's BMW. After analysis, Gingell concluded that the samples were similar in color, texture, structure, chemical type, and elemental composition.

The defendant argues that "Ortiz testified that a Bridgeport police detective visited a [BMW] dealership . . . and showed members of the staff there [photographs] of the BMW. Those individuals '*determined that it was an X3 BMW, a new model*.' . . . This statement by an employee of [the dealership] is testimonial hearsay." (Citation omitted; emphasis added.) She also argues: "The admission of this testimony violated the defendant's right of confrontation because she never had the chance to cross-examine the person from the dealership to test the basis of this information." The state responds that the statement of the dealership employee was not hearsay because it was not offered for the truth of the matter asserted. It argues: "Because the purpose of the statement was not to show that the vehicle in the [photograph] was, in fact, a BMW X3 but, instead, [was] merely to show how the police investigation proceeded, it was not hearsay and raised no legitimate confrontation clause issue." We agree with the state.

"It is fundamental that the defendant's rights to confront the witnesses against him and to present a defense are guaranteed by the sixth amendment to the United States constitution. . . . A defendant's right to present

a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment . . . . Furthermore, the sixth amendment rights to confrontation and to compulsory process are made applicable to state prosecutions through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 593, 175 A.3d 514 (2018).

"Under *Crawford* v. *Washington*, [541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)], hearsay statements of an unavailable witness that are testimonial in nature may be admitted in accordance with the confrontation clause only if the defendant previously has had the opportunity to cross-examine the unavailable witness. Nontestimonial statements, however, are not subject to the confrontation clause and may be admitted under state rules of evidence. *Davis* v. *Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). Thus, the threshold inquiries that determine the nature of the claim are whether the statement was hearsay, and if so, whether the statement was testimonial in nature, questions of law over which our review is plenary." *State* v. *Smith*, 289 Conn. 598, 618–19, 960 A.2d 993 (2008).

"As a general matter, a testimonial statement is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. . . . Although the United States Supreme Court did not provide a comprehensive definition of what constitutes a testimonial statement in *Crawford*, the court did describe three core classes of testimonial statements: [1] ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions [and] . . . [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . .

"Subsequently, in *Davis* v. *Washington*, supra, 547 U.S. 822, the United States Supreme Court elaborated on the third category and applied a primary purpose test to distinguish testimonial from nontestimonial statements given to police officials, holding: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to

establish or prove past events potentially relevant to later criminal prosecution. . . .

"In *State* v. *Slater*, [285 Conn. 162, 172 n.8, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008)], we reconciled *Crawford* and *Davis*, noting: We view the primary purpose gloss articulated in *Davis* as entirely consistent with *Crawford*'s focus on the reasonable expectation of the declarant. . . . [I]n focusing on the primary purpose of the communication, *Davis* provides a practical way to resolve what *Crawford* had identified as the crucial issue in determining whether out-of-court statements are testimonial, namely, whether the circumstances would lead an objective witness reasonably to believe that the statements would later be used in a prosecution. . . . We further emphasized that this expectation must be reasonable under the circumstances and not some subjective or far-fetched, hypothetical expectation that takes the reasoning in *Crawford* and *Davis* to its logical extreme." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, supra, 289 Conn. 622–24.

In the present case, the defendant asserts that the statement of the dealership employee or employees, as offered by Ortiz, was testimonial hearsay under the third category recognized in *Crawford*. See id. Before we consider whether the statement was testimonial, however, we first must determine whether it amounted to hearsay. See id., 618–19 (threshold inquiry that determines nature of claim is whether statement was hearsay); see also *State* v. *Carpenter*, supra, 275 Conn. 820–21 (if statement is not hearsay, defendant not entitled to review of unpreserved claim under *Golding*).

The Connecticut Code of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." Conn. Code Evid. § 8-1 (3). "An out-of-court statement is hearsay when it is offered to establish the truth of the matters contained therein. . . . A statement offered solely to show its effect upon the hearer, [however], is not hearsay." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 195, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). We conclude that the statement was not hearsay because it was not offered for the truth of the matter asserted, but, rather, it was offered to show its effect on the listener.

During Ortiz' testimony at the defendant's trial, the following colloquy occurred on direct examination:

"[Prosecutor]: Did you know . . . whether . . . you were looking for any particular model type [of vehicle]?

"[Ortiz]: Well, a little while after, we did, yes.

"[Prosecutor]: And . . . what led you to that con-

clusion?

"[Ortiz]: We had one of our detectives go to the BMW dealership and show the photos to personnel at the . . . Helmut's BMW, and *they were able to—they determined it was an X3 BMW, a newer model.*

"[Prosecutor]: Now, in relation to that investigation, what, if anything, did your detective bureau take in terms of steps of locating this particular vehicle?

"[Ortiz]: We were able to obtain a list of all the BMWs in the state of Connecticut; all the X3s, the X5s from years 2000 to 2014."[13] (Emphasis added.)

The defendant argues that the statement of the dealership employee was offered for the truth, and it served to bolster the state's claim "that the BMW in the picture was the defendant's BMW." She contends that "[t]he defense was unable to find out how certain the employee . . . was that the car in the still photograph was a BMW X3. The defense was not able to find out whether the BMW resembled an earlier model, though they thought it was a later model.[14] Had the defense been able to ascertain this information, it may have helped convince the jury that the BMW in the video was not the defendant's vehicle." (Footnote added.) We conclude that the statement was not hearsay.

In the present case, Ortiz was testifying as to the procedure that the police used to conduct their investigation. As part of their investigation, after producing still photographs of the collision and interviewing Agyei's son, learning from him that the vehicle that hit his mother's vehicle was a white BMW, the police took those still photographs to a BMW dealership to see if someone could ascertain the year, make, and model of the vehicle from the photos. They then used that information to obtain a list of similar vehicles from the Department of Motor Vehicles. The statement that personnel at the dealership "*were able to—they determined it was an X3 BMW, a newer model*"; (emphasis added); was offered to demonstrate, not that the vehicle, in fact, was a newer model X3 or that it was the defendant's vehicle. Rather, it was used to demonstrate the route that the police took in deciding to obtain a list of 2000-2014 X3 and X5 BMWs and in conducting their investigation, which included investigating fifteen model years of X3s and X5s, and not just newer model X3s.

We conclude, therefore, that the defendant's evidentiary claim fails under *Golding*'s second prong because the admission of an out-of-court statement for purposes other than its truth raises no confrontation clause issue. See *State* v. *Carpenter*, supra, 275 Conn. 821, citing *Crawford* v. *Washington*, supra, 59–60 n.9 (citing *Tennessee* v. *Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L. Ed. 2d 425 [1985]).

III

CONCLUSION

We have determined, under the facts of this case as pursued by the state that (1) the jury's verdicts of guilty on the charges of intentional manslaughter and reckless manslaughter are not legally inconsistent, (2) the jury's verdicts of guilty on the charges of intentional manslaughter and criminally negligent operation are not legally inconsistent, (3) the jury's verdicts of guilty on the charges of reckless manslaughter and criminally negligent operation are legally inconsistent, and (4) the defendant's testimonial hearsay claim fails under *Golding*'s second prong.

We next consider the remedy and whether this case must be remanded to the trial court, and, if so, the appropriate remand order. Because of the inconsistency in the verdicts, we have no way of knowing whether the jury, if it properly had considered the mental elements of each crime, would have found the defendant guilty of reckless manslaughter or criminally negligent operation. Setting aside one of the convictions, therefore, will not cure the problem. Moreover, it is not for this court, on appeal, to make a factual determination as to the defendant's mental state or states at the time the collision occurred. The inconsistent verdicts, therefore, require that we vacate the defendant's convictions on the charges of reckless manslaughter and criminally negligent operation, and order a new trial thereon.[15] See *State* v. *King*, supra, 216 Conn. 594–95. On retrial, if properly supported by the evidence and pursued by the state pursuant to the same theory, the trial court may submit both counts to the jury, but it should instruct the jury that criminally negligent operation and reckless manslaughter can be found only in the alternative. The court also should make clear to the jury that it may find the defendant guilty of either criminally negligent operation or reckless manslaughter, but it may not convict her of both. See id.

The state, citing to *State* v. *Polanco*, 308 Conn. 242, 262–63, 61 A.3d 1084 (2013), argues, in a footnote in its brief, that if we conclude that the reckless manslaughter and misconduct with a motor vehicle convictions are inconsistent, we should remand with direction to reinstate the intentional manslaughter conviction. To the extent that the state is asking for the conviction of intentional manslaughter to be reinstated, and not simply that the state be permitted to retry the defendant on that charge, we decline to do so. The state moved at sentencing to vacate the conviction on that charge partly because doing so went "along with the spirit of the state's intent during the beginning of this case." See footnote 3 of this opinion. Under these circumstances, the most the state can ask for is what the defendant has requested—a retrial on all three of the charges related to Agyei's death. In the concluding paragraph of her appellate brief, the defendant requests "that she

be granted a new trial on all the charges. Alternatively, she requests a new trial on the charges of intentional manslaughter [first], reckless manslaughter [first], and misconduct with a motor vehicle." Accordingly, we order a retrial on all three charges.

The judgment is reversed in part, the convictions of reckless manslaughter and criminally negligent operation are vacated, and a new trial is ordered as to those counts and the count of intentional manslaughter consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant also was convicted of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a). The judgment as to those convictions is not challenged.

[2] There is no indication in the record as to why the defendant engaged in the conduct that led to her arrest and conviction.

[3] At the sentencing hearing, the state argued in relevant part: "Based on the Supreme Court's recent decisions in *State* v. *Polanco*, [308 Conn. 242, 61 A.3d 1084 (2013)], [*State* v.] *Miranda*, [317 Conn. 741, 120 A.3d 490 (2015)], and [*State* v.] *Wright*, [320 Conn. 781, 135 A.3d 1 (2016)], the state is asking that Your Honor enter an order to vacate the conviction on the intentional manslaughter under the legal theory of vacatur and that Your Honor sentence the defendant on the remaining counts, the reckless manslaughter . . . and misconduct with a motor vehicle. I think that goes along with the spirit of the state's intent during the beginning of this case. The state did have the belief when we initially filed our long form information that we [would proceed] on both a legal theory of intentional and reckless manslaughter based on the fact that the defendant's vehicle came into contact with the Agyei vehicle twice. But, in light of the convictions, we'd ask that she be sentenced solely on the reckless manslaughter and that Your Honor vacate the intentional manslaughter for sentencing purposes."

The cases relied on by the state in support of its motion to vacate each involve cumulative convictions that violated double jeopardy protections. In *Polanco*, our Supreme Court held that vacatur was the appropriate remedy for double jeopardy violations involving cumulative convictions for both greater and lesser included offenses. *State* v. *Polanco*, supra, 308 Conn. 245. In *Miranda*, the court held that vacatur was the appropriate remedy for double jeopardy violations involving cumulative convictions of capital felony and felony murder, where both convictions involved the murder of a single victim. *State* v. *Miranda*, supra, 317 Conn. 753. In *Wright*, the court held that vacatur was the appropriate remedy for the double jeopardy violation caused by the conviction of three counts of conspiracy arising from a single agreement with multiple criminal objectives. *State* v. *Wright*, supra, 320 Conn. 830.

Following the state's motion to vacate the intentional manslaughter conviction in the present case, the defendant objected, stating, in part, that she wanted to preserve the record for appeal; she also requested a mistrial on the ground that the state had overcharged in this case; the court denied the defendant's request, and it vacated the defendant's conviction of intentional manslaughter.

[4] Specifically, the court sentenced the defendant to twenty years incarceration, execution suspended after sixteen years, followed by five years probation on the manslaughter in the first degree count, five years incarceration on the misconduct with a motor vehicle count, ten years incarceration on the risk of injury to a child count, and ten years incarceration on the evasion of responsibility count. The court ordered all sentences to run concurrently.

[5] Because the defendant did not raise this claim in the trial court, she seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015), which governs our consideration of unpreserved constitutional claims. The state concedes that the defendant is entitled to such review, but argues that a constitutional violation does not exist.

[6] The state suggests in its brief that we need not consider whether the two manslaughter verdicts are legally inconsistent because the court vacated

the intentional manslaughter conviction. We disagree. Accepting the state's argument would mean that a review of potentially legally inconsistent verdicts could be thwarted by the state requesting that the trial court vacate one of the convictions. That is not consistent with our jurisprudence. See *State* v. *Chyung*, supra, 325 Conn. 240 (despite trial court's vacatur of manslaughter in first degree conviction, Supreme Court also vacated inconsistent murder conviction and remanded case for new trial on both counts, holding "legally inconsistent verdicts involve jury error . . . because there is no way for the trial court or this court to know which charge the jury found to be supported by the evidence, neither verdict can stand").

[7] The state made no argument to the jury concerning criminally negligent operation. The court, however, instructed the jury on that crime.

[8] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument . . . or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[9] "We emphasize that our conclusion that the defendant's convictions of intentional and reckless assault in the first degree were not mutually exclusive does not mean that a defendant lawfully may be punished for both offenses. . . . [T]he trial court in the present case merged the two assault convictions for purposes of sentencing and sentenced the defendant only on his intentional assault conviction. The defendant has not claimed that this approach violates his right against double jeopardy." (Citation omitted.) *State* v. *Nash*, supra, 316 Conn. 669–70 n.19.

[10] We recognize that the differences between *King*, *Chyung*, and *Nash* are subtle. For example, in *King*, the jury necessarily would have to have found that the defendant acted with the specific intent to cause the death of the victim (attempted murder), and, at the same time, acted without the conscious objective to create a risk of death for the victim (reckless assault). See *State* v. *King*, supra, 216 Conn. 585. It is impossible to possess both mental states simultaneously.

In *Chyung*, the jury necessarily would have to have found that the defendant had the specific intent to kill the victim (murder), and simultaneously, that the defendant acted without the conscious objective to create a grave risk of death for the victim (reckless manslaughter). See *State* v. *Chyung*, supra, 325 Conn. 236. Again, it is impossible to have both intents simultaneously.

In *Nash*, however, the jury would have to have found that the defendant intended to cause *serious physical injury* to the victim (intentional assault), and, at the same time, that the defendant acted without the conscious objective of creating a *grave risk of death* for the victim, resulting in the victim's serious physical injury (reckless assault). See *State* v. *Nash*, supra, 316 Conn. 666–67. Intentional assault requires *a specific intent to cause serious physical injury*; reckless assault requires *recklessly creating a grave risk of death*, which results in serious physical injury. One can intend to cause serious physical injury to a victim, while, at the same time, consciously disregarding the fact that he or she is putting that victim's life in grave danger, ultimately resulting in serious physical injury to the victim.

[11] Pursuant to *Golding*, a defendant may prevail on a claim of constitutional error not preserved at trial only if all four of the following conditions are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of Golding by eliminating word "clearly" before words "exists" and "deprived" [internal quotation marks omitted]).

We note that, although raising a claim for the first time on appeal can amount to an ambush on the state and the trial court, "our Supreme Court has reviewed a confrontation claim under the bypass rule of *State* v. *Golding*, [supra, 213 Conn. 233], even when there was a claim of waiver. *State* v. *Smith*, 289 Conn. 598, 619, 960 A.2d 993 (2008); see also *State* v. *Holley*, 327 Conn. 576, 590, 175 A.3d 514 (2018)." *State* v. *Walker*, 180 Conn. App. 291, 301, 183 A.3d 1, cert. granted, 328 Conn. 934, 183 A.3d 634 (2018).

[12] The defendant's location at or near the scene of the collision also was confirmed by Special Agent James Wines, from the Federal Bureau of Investigation, who, after investigating the defendant's cell phone records, concluded that the defendant was in a cellular phone tower area that included the scene of the collision at the time of the collision on December 4, 2014.

[13] On cross-examination by defense counsel, the following colloquy occurred:

"[Defense Counsel]: Now . . . in response to questions from the state, you talked about efforts made to locate the vehicle involved in this collision, correct?

"[Ortiz]: That's correct, sir.

"[Defense Counsel]: And your efforts were informed at least on December 4th, primarily by two sources of information; your . . . interview with the young man at the hospital—with [Agyei's son], the eleven year old?

"[Ortiz]: Yes, the victim.

"[Defense Counsel]: Who told you that he thought . . . a white BMW had collided with the car, correct?

"[Ortiz]: He was certain it was a BMW, yes.

"[Defense Counsel]: And you saw, also, a videotape with a white vehicle as well, correct?

"[Ortiz]: That's correct, sir.

"[Defense Counsel]: And you testified here today that you went to a BMW dealer to identify the vehicle, correct?

"[Ortiz]: I didn't go, but one of the detectives went there and interviewed someone that works there, yes."

[14] The defendant does not explain why she "was not able to find out whether the BMW resembled an earlier model, though [the personnel at this dealership] thought it was a later model." We can ascertain no reason why she could not have showed the still photographs to an expert to ascertain an opinion on the year, make, and model of the white vehicle in the photos.

[15] The defendant's convictions of risk of injury to a child and evasion of responsibility in the operation of a motor vehicle remain intact.