******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* PATRICIA DANIELS
## (SC 20376)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Keller, Js.

*Syllabus*

A jury found the defendant guilty of intentional manslaughter in the first degree, reckless manslaughter in the first degree, and misconduct with a motor vehicle, among other crimes. The defendant had been driving her vehicle at a high rate of speed when she struck the driver's side of the victim's vehicle. The defendant then ran her vehicle into the victim's vehicle from behind, causing the victim's vehicle to strike a tree, which resulted in the victim's death. At the defendant's sentencing hearing, the state moved to vacate the defendant's intentional manslaughter conviction, citing to *State* v. *Polanco* (308 Conn. 242) and its progeny, in which this court held that the proper remedy for a double jeopardy violation arising out of cumulative convictions is to vacate one of the convictions rather than merging them. The trial court granted the state's motion and vacated the intentional manslaughter conviction for sentencing purposes. The defendant appealed from the judgment of conviction to the Appellate Court, claiming, inter alia, that the jury's verdict of guilty of intentional manslaughter, reckless manslaughter, and misconduct with a motor vehicle, the latter of which involves the criminally negligent operation of a motor vehicle that causes the death of another person, was legally inconsistent because each of those crimes requires proof of a mutually exclusive mental state. The Appellate Court determined that neither reckless manslaughter nor misconduct with a motor vehicle was inconsistent with intentional manslaughter but agreed that the defendant's conviction of reckless manslaughter and misconduct with a motor vehicle was legally inconsistent insofar as the defendant could not have consciously disregarded the risk of the victim's death while simultaneously failing to perceive that same risk of death. The Appellate Court rejected the state's argument that the proper remedy for the legal inconsistency was to remand the case with direction to reinstate the defendant's intentional manslaughter conviction and, instead, reversed the judgment of the trial court in part, vacated the defendant's conviction of reckless manslaughter and misconduct with a motor vehicle, and ordered a new trial as to those counts and the intentional manslaughter count. The state, on the granting of certification, appealed to this court. *Held*:

1. The Appellate Court improperly ordered a new trial on the intentional manslaughter, reckless manslaughter, and misconduct with a motor vehicle counts instead of reinstating the defendant's intentional manslaughter conviction and resentencing the defendant: although the state did not dispute that the defendant's conviction of reckless manslaughter and misconduct with a motor vehicle was inherently inconsistent and, therefore, was properly vacated by the Appellate Court, this court had clarified in *Polanco* and its progeny that the adoption of vacatur as the appropriate remedy for cumulative convictions did not preclude the reinstatement of a defendant's vacated conviction if it was vacated to avoid a double jeopardy violation and was not affected by the legal inconsistency that necessitated the reversal of the controlling offense or offenses of which the defendant had been convicted; in the present case, the defendant's intentional manslaughter conviction was vacated for the purpose of avoiding a double jeopardy violation, as a review of the record demonstrated that, at the defendant's sentencing hearing, the prosecutor specifically cited to case law concerning vacatur that was developed and applied in the context of double jeopardy violations and indicated that the vacatur request was consistent with the state's theory at trial that the two strikes to the victim's vehicle arose from a single act that was either intentional or reckless, and the prosecutor was apparently under the belief that vacating one of the manslaughter counts was necessary to avoid the imposition of cumulative punishments; moreover, the vacated intentional manslaughter conviction was

not affected by the legal inconsistency that necessitated the vacating on appeal of the defendant's conviction of reckless manslaughter and misconduct with a motor vehicle, namely, the impossibility of consciously disregarding the risk of the victim's death while simultaneously failing to perceive that same risk of death, because the crime of intentional manslaughter requires the jury to find only that the defendant intended to cause serious physical injury to another person and that she caused the death of such person or of a third person, not that she had a specific mental state with respect to creating a risk of death; accordingly, because the defendant's intentional manslaughter conviction was not tainted by the inconsistency in the jury's verdict and was vacated to avoid a potential double jeopardy violation, this court reversed the judgment of the Appellate Court as to the remedy for the jury's inconsistent verdict only, upholding the Appellate Court's vacating of the defendant's conviction of reckless manslaughter and misconduct with a motor vehicle but remanding the case with direction to reinstate the defendant's intentional manslaughter conviction, to sentence the defendant on that count, and to resentence her on her conviction of two other counts unrelated to the counts of manslaughter and misconduct with a motor vehicle.

2. The defendant could not prevail on her claim that the judgment of the Appellate Court should be affirmed on the alternative ground that that court incorrectly had concluded that her intentional manslaughter conviction was not inconsistent with her conviction of reckless manslaughter and misconduct with a motor vehicle:

a. The defendant's conviction of intentional manslaughter and reckless manslaughter was not legally inconsistent: the crime of intentional manslaughter requires only that the defendant had the intent to cause serious physical injury to a person and caused the death of such person or of a third person, whereas the elements of reckless manslaughter include the requirement that the defendant recklessly engaged in conduct that created a grave risk of death to another person, and, therefore, the mental state requirements for the two offenses did not relate to the same result; accordingly, the jury reasonably could have found that the defendant simultaneously acted intentionally and recklessly with respect to different results, in that she specifically intended to cause serious physical injury to the victim and, in so doing, consciously disregarded a substantial and unjustifiable risk that her actions created a grave risk of death to the victim.

b. The defendant's conviction of intentional manslaughter and misconduct with a motor vehicle was not legally inconsistent: the mental state required for misconduct with a motor vehicle, namely, that the defendant failed to perceive a substantial and unjustifiable risk that the manner in which she operated her vehicle would cause the death of another person, was not mutually exclusive with the mental state required for the crime of intentional manslaughter, namely, that the defendant had the intent to cause serious physical injury; because the defendant could have intended to cause serious physical injury to the victim, as required for intentional manslaughter, while, at the same time, have failed to perceive a substantial and unjustifiable risk that the manner in which she operated her vehicle would cause the victim's death, as required for misconduct with a motor vehicle, the mental state elements of each crime did not relate to the same result.

Argued October 20, 2021—officially released March 29, 2022

*Procedural History*

Substitute information charging the defendant with two counts of the crime of manslaughter in the first degree, and with one count each of the crimes of misconduct with a motor vehicle, risk of injury to a child, and evasion of responsibility in the operation of a motor vehicle, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kavanewsky, J.*; verdict and judgment of guilty; thereafter, the court vacated the conviction as to one count of manslaughter in the first degree, and the defendant appealed to the Appellate Court, *Lavine, Bright* and

*Bear, Js.*, which reversed in part the trial court's judgment, and the state, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings.*

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, *John C. Smriga*, former state's attorney, and *Marc R. Durso*, senior assistant state's attorney, for the appellant (state).

*Laila M. G. Haswell*, senior assistant public defender, for the appellee (defendant).

*Opinion*

ECKER, J. Following a jury trial, the defendant, Patricia Daniels, was found guilty of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) (intentional manslaughter),[1] manslaughter in the first degree in violation of § 53a-55 (a) (3) (reckless manslaughter),[2] and misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a) (criminally negligent operation), among other crimes.[3] At the sentencing hearing, the trial court vacated the defendant's intentional manslaughter conviction pursuant to *State* v. *Polanco*, 308 Conn. 242, 245, 61 A.3d 1084 (2013), at the request of the state and rendered judgment on the remaining counts of conviction. The defendant appealed on the ground that the jury's verdict was legally inconsistent because each of these three charged crimes required mutually exclusive mental states. See *State* v. *Daniels*, 191 Conn. App. 33, 38, 213 A.3d 517 (2019). The Appellate Court agreed that the defendant's conviction of reckless manslaughter and criminally negligent operation was legally inconsistent; id., 53; but also determined that neither reckless manslaughter nor criminally negligent operation was inconsistent with intentional manslaughter. Id., 49, 51. Despite these latter holdings, the Appellate Court did not remand the case with direction to reinstate the intentional manslaughter conviction but, instead, reversed the defendant's conviction of all three crimes and remanded the case for a new trial on those three charges. Id., 62–63. On appeal to this court, the state argues that the Appellate Court improperly ordered a new trial on all three charges rather than reinstating the defendant's intentional manslaughter conviction. We agree with the state and, accordingly, reverse in part the judgment of the Appellate Court.

The relevant underlying facts are set forth in the Appellate Court's opinion. "The victim, Evelyn Agyei, left her Bridgeport home at approximately 6 a.m. on December 4, 2014. Her eleven year old son accompanied her. Agyei and her son got into Agyei's Subaru Outback (Subaru), Agyei driving and her son in the back seat on the passenger's side. After traversing some back roads, they took Bond Street and arrived at the intersection of Bond Street and Boston Avenue. Agyei stopped at the red light and then proceeded to make a right turn onto Boston Avenue, staying in the right lane. As she was making the right turn, her son looked to the left and saw a white BMW sport utility vehicle (BMW) approximately two streets down, traveling at a high rate of speed in the left lane.

"After Agyei [turned] onto Boston Avenue, the driver of the BMW pulled alongside Agyei's vehicle. Agyei's son saw the BMW logo on the hood; however, he could not see the driver or the license plate. The driver of the BMW then moved into the right lane, hitting Agyei's

Subaru once on the driver's side and causing her to begin to lose control of the vehicle. The driver of the BMW then moved behind the Subaru and ran into it from behind, causing the vehicle to cross the median, proceed under a fence, and hit a tree. Tragically, Agyei died from her injuries, and her son, who also was injured, continues to have vision problems as a result of the injuries he sustained. After an investigation . . . the police, having concluded that the defendant was the driver of the BMW that hit the Subaru . . . [and] cause[d] Agyei's death and the injuries to Agyei's son, arrested the defendant." Id., 36–37.

Following a jury trial, the defendant was found guilty of intentional manslaughter, reckless manslaughter, and criminally negligent operation. See footnote 3 of this opinion. At the sentencing hearing, the state moved to vacate the defendant's intentional manslaughter conviction, explaining: "I think that [disposition] goes along with the spirit of the state's intent during the beginning of this case. The state did have the belief, when we initially filed our long form information, that we [would proceed] on both a legal theory of intentional and reckless manslaughter based on the fact that the defendant's vehicle came into contact with [Agyei's] vehicle twice. But, in light of the convictions, we'd ask that she be sentenced solely on the reckless manslaughter [conviction] and that [the court] vacate the intentional manslaughter [conviction] for sentencing purposes." In support of its request, the state cited to our double jeopardy case law, namely, *State* v. *Polanco*, supra, 308 Conn. 242, *State* v. *Miranda*, 317 Conn. 741, 120 A.3d 490 (2015), and *State* v. *Wright*, 320 Conn. 781, 135 A.3d 1 (2016).[4] The trial court granted the state's request, vacated the defendant's conviction of intentional manslaughter, and sentenced the defendant to a total effective sentence of twenty years of incarceration, execution suspended after sixteen years, and five years of probation.[5]

The defendant appealed from the trial court's judgment to the Appellate Court, claiming that the jury's verdict was legally inconsistent because the crimes of intentional manslaughter, reckless manslaughter, and criminally negligent operation each require proof of a mutually exclusive mental state.[6] See *State* v. *Daniels*, supra, 191 Conn. App. 38. The Appellate Court agreed with the defendant that the jury's verdict was partially inconsistent and reversed in part the judgment of the trial court. Id., 53, 62–63. The Appellate Court determined that there was no legal inconsistency in either the defendant's conviction of intentional and reckless manslaughter or her conviction of intentional manslaughter and criminally negligent operation; id., 49, 51; but it found that the defendant's conviction of reckless manslaughter and criminally negligent operation was legally inconsistent. Id., 53. The Appellate Court reasoned that the crimes of reckless manslaughter and criminally negli-

gent operation were "mutually exclusive when examined under the facts and theory of the state in the present case" because they each require proof of a different mental state as to the same result—the death of Agyei. Id. Specifically, the defendant could not have been reckless as to the risk of Agyei's death by "*consciously disregard*[*ing*] a substantial and unjustifiable risk that her actions would cause . . . death, while, simultaneously, [having been negligent as to the risk of Agyei's death by] *failing to perceive* a substantial and unjustifiable risk that her actions would cause . . . death."[7] (Emphasis in original.) Id. Simply put, a person cannot consciously disregard a risk that she fails to perceive.

To remedy the legal inconsistency in the jury's verdict, the Appellate Court vacated the defendant's conviction of reckless manslaughter and criminally negligent operation and remanded the case to the trial court for a new trial on all three charges related to Agyei's death: intentional manslaughter, reckless manslaughter, and criminally negligent operation. Id., 63. In doing so, the Appellate Court rejected the state's claim that the legal inconsistency could be remedied by reinstating the defendant's intentional manslaughter conviction, pointing out that the state had "moved at sentencing to vacate the conviction on that charge partly because doing so went 'along with the spirit of the state's intent during the beginning of this case' " and, therefore, that "the most the state can ask for is what the defendant has requested—a retrial on all three of the charges related to Agyei's death." Id. We subsequently granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court improperly order a new trial rather than reinstate the defendant's conviction of intentional manslaughter in the first degree, which was vacated for sentencing purposes under *State* v. *Polanco*, [supra, 308 Conn. 242]?" *State* v. *Daniels*, 333 Conn. 918, 216 A.3d 651 (2019).

On appeal, the state argues that the proper remedy for the legal inconsistency in the jury's verdict is to reinstate the defendant's intentional manslaughter conviction pursuant to *Polanco* and its progeny. According to the state, there is no substantive obstacle to resurrecting the defendant's intentional manslaughter conviction because "the reason for the state's request to vacate the intentional manslaughter conviction was to avoid a potential double jeopardy problem." The state also contends that the defendant's intentional manslaughter conviction was "not undermined by the Appellate Court's rationale for [vacating] her other two convictions" and that the record reflects that the jury necessarily found, beyond a reasonable doubt, all of the essential elements necessary to convict the defendant of intentional manslaughter.

The defendant responds that the state waived its claim for reinstatement of the defendant's intentional man-

slaughter conviction because the state's posttrial motion to vacate was "not related to double jeopardy" but, rather, was prompted by "the state's theory that the crime was intentional or reckless, but not both." Furthermore, the defendant contends that her intentional manslaughter conviction is tainted by the legal inconsistency in the jury's verdict "because the convictions required the jury to find inconsistent narratives when it [found] the defendant [guilty] of all three charges." Alternatively, the defendant claims that the Appellate Court incorrectly determined that the jury's guilty verdict as to the intentional manslaughter count was not legally inconsistent with its guilty verdict as to the reckless manslaughter and criminally negligent operation counts.

I

REMEDY FOR THE JURY'S
INCONSISTENT VERDICT

The state claims that the Appellate Court improperly ordered a new trial on the defendant's conviction of intentional manslaughter, reckless manslaughter, and criminally negligent operation, rather than reinstating the defendant's intentional manslaughter conviction. We agree.

The resolution of a claim of an inconsistent verdict presents a question of law, over which our review is plenary. See, e.g., *State* v. *Hazel*, 106 Conn. App. 213, 223, 941 A.2d 378, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008). "When a jury has [returned] legally inconsistent verdicts, there is no way for the reviewing court to know which charge the jury found to be supported by the evidence. . . . Accordingly, the court must vacate both convictions and remand the case to the trial court for a new trial." (Citation omitted; footnote omitted.) *State* v. *Chyung*, 325 Conn. 236, 247, 157 A.3d 628 (2017); see also *State* v. *Alicea*, 339 Conn. 385, 391, 260 A.3d 1176 (2021); *People* v. *Gallagher*, 69 N.Y.2d 525, 530, 508 N.E.2d 909, 516 N.Y.S.2d 174 (1987). In other words, when a jury's verdict is tainted by a legal defect such as inconsistency, the tainted counts of conviction cannot stand.

The state, at this stage of the proceedings, does not dispute that the defendant's conviction of reckless manslaughter and criminally negligent operation is inherently inconsistent and, therefore, properly was reversed by the Appellate Court. The state argues, however, that a new trial is unnecessary because the inconsistency can be remedied by the reinstatement of the defendant's intentional manslaughter conviction, which was not inconsistent with the jury's verdict on the reckless manslaughter and criminally negligent operation counts and, therefore, remains untainted by the defect.

In *State* v. *Polanco*, supra, 308 Conn. 242, we held that, "when a defendant is convicted of greater and

lesser included offenses [in violation of the constitutional right to be free from double jeopardy], the trial court shall vacate the conviction for the lesser offense rather than merging it with the conviction for the greater offense." Id., 260. We clarified that our adoption of vacatur as the appropriate remedy for double jeopardy violations did not preclude the reinstatement of the defendant's vacated conviction if the defendant's "greater offense is subsequently reversed for reasons unrelated to the viability of the vacated conviction." Id., 262. We observed that this procedure already is employed by "many other courts" and that it is "a well established practice in our appellate courts to direct the trial court to render a judgment of conviction on a lesser included offense on which the jury did not even return a verdict, when the conviction for the greater offense is reversed *for reasons that do not touch the elements of the lesser offense.*" (Emphasis added.) Id., 262–63.

We extended this remedy beyond greater and lesser included offenses in *State* v. *Miranda*, supra, 317 Conn. 741. In that case, the defendant claimed that his cumulative convictions and sentences for capital felony, murder, and felony murder violated double jeopardy because they arose from the killing of a single victim. Id., 744–45, 751. We explained that applying the remedy of vacatur "beyond scenarios involving greater and lesser included offenses will . . . promote inter-jurisdictional and intra-jurisdictional harmony, and better safeguard against unconstitutional multiple punishments." Id., 753; see *State* v. *Wright*, supra, 320 Conn. 830 (vacatur is appropriate remedy for defendant's cumulative convictions in violation of double jeopardy). We rejected the state's concern that a defendant might " 'escape punishment entirely if he were to later succeed in reversing his controlling [capital felony] conviction,' " reasoning that there was "no substantive obstacle to resurrecting a cumulative conviction that was once vacated on double jeopardy grounds—provided that the reasons for overturning the controlling conviction would not also undermine the vacated conviction. . . . This holds true regardless of whether the previously vacated conviction was for a lesser included offense of the controlling conviction, or was cumulative in some other manner. In either instance, a jury necessarily found that all the elements of the cumulative offense were proven beyond a reasonable doubt. Put differently, although the cumulative conviction goes away with vacatur, the jury's verdict does not." (Citation omitted.) *State* v. *Miranda*, supra, 753–54.

Pursuant to the foregoing authorities, the defendant's intentional manslaughter conviction may be reinstated if two criteria are met: (1) the conviction was vacated to avoid a double jeopardy violation; and (2) the conviction is unaffected by the legal inconsistency that necessitated the reversal of the defendant's conviction of reckless manslaughter and criminally negligent opera-

tion. We address each of these criteria in turn.

A

### The Defendant's Conviction Was Vacated To Avoid a Potential Double Jeopardy Violation

We must first determine whether the defendant's intentional manslaughter conviction was vacated to avoid a double jeopardy violation. The state moved to vacate the defendant's intentional manslaughter conviction at sentencing "under the legal theory of vacatur" articulated in "*Polanco*, *Miranda*, and *Wright* . . . ." The state explained that vacatur of the defendant's intentional manslaughter conviction "goes along with the spirit of the state's intent during the beginning of this case. The state did have the belief, when we initially filed our long form information, that we [would proceed] on both a legal theory of intentional and reckless manslaughter based on the fact that the defendant's vehicle came into contact with [Agyei's] vehicle twice. But, in light of the convictions, we'd ask that she be sentenced solely on the reckless manslaughter [conviction] and that [the court] vacate the intentional manslaughter [conviction] for sentencing purposes."

We conclude that the defendant's intentional manslaughter conviction was vacated for the purpose of avoiding a potential double jeopardy violation.[8] First, in requesting vacatur, the state cited case law on vacatur developed and applied by this court in the specific context of double jeopardy violations. It appears that the state believed that it was necessary to vacate one of the two manslaughter convictions to avoid the imposition of cumulative punishments. Second, the state explained that its request was consistent with its theory at trial that both strikes to Agyei's vehicle arose from a single act that was either intentional or reckless, thereby invoking the first prong of the applicable double jeopardy analysis, which requires "the charges [to] arise out of the same act or transaction." (Internal quotation marks omitted.) *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 227, 244 A.3d 908 (2020); see id., 226–27 ("When the defendant is charged with the violation of two distinct statutes in a single criminal proceeding arising from a single underlying set of events, we have employed a two part analysis. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense." (Internal quotation marks omitted.)). Although the state did not use the talismanic words "double jeopardy" to explain its reasoning, the articulated basis for its vacatur request was unequivocally rooted in double jeopardy principles. See, e.g., *State* v. *Edwards*, 100 Conn. App. 565, 578 n.6, 918 A.2d 1008 ("Connecticut courts have refused to attach talismanic significance to the presence or absence of particular words or phrases" (internal quotation marks omitted)), cert. denied, 282 Conn. 928, 926 A.2d 666 (2007), and cert. denied, 282 Conn. 929,

926 A.2d 667 (2007).

The defendant contends that the state's vacatur request was not predicated on double jeopardy grounds because the state sought to vacate "the greater charge rather than the lesser charge" in violation of the well established rule that, "when a defendant is convicted of greater and lesser included offenses, the trial court *shall vacate the conviction for the lesser offense* . . . ." (Emphasis added.) *State* v. *Polanco*, supra, 308 Conn. 260. This argument fails at the starting gate, however, because reckless manslaughter is not a lesser included offense of intentional manslaughter. "By definition, [a] lesser included offense is one that does not require proof of elements beyond those required by the greater offense." (Internal quotation marks omitted.) *State* v. *Johnson*, 316 Conn. 34, 44, 111 A.3d 447 (2015). Reckless manslaughter requires proof of essential elements that intentional manslaughter does not, specifically, the existence of "circumstances evincing an extreme indifference to human life" and the requirement that the defendant "recklessly engages in conduct which creates a grave risk of death to another person . . . ." General Statutes § 53a-55 (a) (3). Thus, it is possible to commit the crime of intentional manslaughter without committing the crime of reckless manslaughter. See, e.g., *State* v. *Tinsley*, 340 Conn. 425, 435–36, 264 A.3d 560 (2021) (one offense is not lesser included offense of another if it is possible to commit alleged greater crime without committing alleged lesser crime). Intentional manslaughter and reckless manslaughter do not stand in the position of greater and lesser included offenses. Instead, they are alternative ways of committing the same offense: manslaughter in the first degree.

B

The Inconsistency in the Jury's Verdict Did Not Affect the Defendant's Vacated Conviction

We next address whether the defendant's intentional manslaughter conviction was affected by the legal inconsistency that necessitated the reversal of the defendant's conviction of reckless manslaughter and criminally negligent operation. It is undisputed that the defendant's conviction of reckless manslaughter and criminally negligent operation convictions is legally inconsistent because each offense requires proof of a mutually exclusive mental state with respect to the death of Agyei. More precisely, as the Appellate Court observed, the defendant could not have consciously disregarded the risk of Agyei's death while simultaneously failing to perceive that same risk of death. See *State* v. *Daniels*, supra, 191 Conn. App. 53. But this holding does not automatically compel the conclusion that the defendant's intentional manslaughter conviction is tainted by the inconsistency in the jury's verdict. We conclude, to the contrary, that the defendant's mutually exclusive mental states with respect to the risk of

Agyei's death do not affect the defendant's intentional manslaughter conviction under § 53a-55 (a) (1) because that statutory provision does not require the jury to find a specific mental state as to the risk of death.

To find the defendant guilty of intentional manslaughter in violation of § 53a-55 (a) (1), the jury was required to find, beyond a reasonable doubt, that the defendant intended "to cause serious physical injury to another person" and "cause[d] the death of such person or of a third person . . . ." General Statutes § 53a-55 (a) (1). Unlike reckless manslaughter under § 53a-55 (a) (3) and criminally negligent operation under § 53a-57 (a), the crime of intentional manslaughter does not require proof of the defendant's mental state with respect to the risk of death;[9] a jury may find a defendant guilty under § 53a-55 (a) (1) whether the defendant actually intended to create a risk of death, or was reckless or negligent with respect to such risk. All that the jury was required to find was that the defendant intended to cause Agyei serious physical injury and that she caused Agyei's death. Thus, the inconsistency in the jury's verdict as to whether the defendant "*consciously disregarded* a substantial and unjustifiable risk that her actions would cause Agyei's death" or "*fail*[*ed*] *to perceive* a substantial and unjustifiable risk that her actions would cause Agyei's death"; (emphasis in original) *State* v. *Daniels*, supra, 191 Conn. App. 53; does not taint the jury's guilty verdict as to the intentional manslaughter count.

Because the defendant's intentional manslaughter conviction is not affected by the inconsistency in the jury's verdict and was vacated to avoid a potential double jeopardy violation; see part I A of this opinion; we conclude that reinstatement of that conviction is the proper remedy in the present case. See *State* v. *Polanco*, supra, 308 Conn. 262–63 (reinstatement of vacated conviction is proper remedy when cumulative conviction is vacated for double jeopardy purposes and reason for reversal does not affect vacated conviction); see also *State* v. *Miranda*, supra, 317 Conn. 755 (same). The "revival of the [vacated] manslaughter conviction would serve the interest of justice"; (internal quotation marks omitted) *State* v. *Miranda*, supra, 755; because the jury returned a guilty verdict on that count, reflecting that it had "found that all the elements of the [vacated] offense were proven beyond a reasonable doubt." Id., 754. Accordingly, we reverse the judgment of the Appellate Court as to the remedy for the jury's inconsistent verdict.[10]

## II

### INCONSISTENT VERDICT

We next address the defendant's alternative grounds for affirmance. The defendant argues that the Appellate Court erred in determining that the jury's guilty verdict

of intentional manslaughter is not inconsistent with the defendant's conviction of reckless manslaughter and criminally negligent operation. According to the defendant, because each conviction required a mutually exclusive mental state and it is impossible to ascertain which of the three inconsistent states of mind the jury attributed to the defendant, the verdict is legally inconsistent with respect to all three counts.

The following legal principles guide our analysis. "A claim of legally inconsistent convictions, also referred to as mutually exclusive convictions, arises when a conviction of one offense requires a finding that negates an essential element of another offense of which the defendant also has been convicted. . . . In response to such a claim, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of [one or more] essential elements for another offense of which the defendant also stands convicted. If that is the case, the [convictions] are legally inconsistent and cannot withstand challenge. . . . Whether two convictions are mutually exclusive presents a question of law, over which our review is plenary." (Internal quotation marks omitted.) *State* v. *Alicea*, supra, 339 Conn. 390–91.

### A

### Intentional Manslaughter and Reckless Manslaughter

The defendant contends that the crimes of intentional manslaughter in the first degree in violation of § 53a-55 (a) (1) and reckless manslaughter in the first degree in violation of § 53a-55 (a) (3) are legally inconsistent pursuant to *State* v. *King*, 216 Conn. 585, 592–94, 583 A.2d 896 (1990) (*King 1990*), and *State* v. *Chyung*, supra, 325 Conn. 247–48. The defendant argues that, similar to *King 1990* and *Chyung*, the defendant's conduct in the present case constituted a single act with one result, namely, death, and, therefore, that "multiple states of mind cannot be attributed to the defendant." We disagree.

Our recent decision in *State* v. *Alicea*, supra, 339 Conn. 385, provides an instructive survey and analysis of our case law regarding the legal consistency of multiple verdicts. As we explained in *Alicea*, "the statutory definitions of intentionally and recklessly are mutually exclusive and inconsistent." (Internal quotation marks omitted.) Id., 391–92, quoting *State* v. *King*, supra, 216 Conn. 593–94. "Intentional conduct requires the defendant to possess a '*conscious objective . . . to cause*' the result described in the statute defining the offense. . . . General Statutes § 53a-3 (11). By contrast, reckless conduct requires that the defendant 'is aware of and *consciously disregards* a substantial and unjustifiable risk' that the result described in the statute will occur. . . . General Statutes § 53a-3 (13). Thus, a reckless mental state is inconsistent with an intentional mental

state because 'one who acts recklessly does not have a conscious objective to cause a particular result.' " (Emphasis in original.) *State* v. *Alicea*, supra, 392.

Nonetheless, convictions involving both intentional and reckless mental states may be legally consistent "in certain circumstances. For example, when each mental state pertains to a different act, a different victim, or a different injury, then the convictions are consistent. . . . Significantly, we have also explained that convictions involving both intentional and reckless mental states may be legally consistent when each mental state pertains to a different *result*." (Citations omitted; emphasis in original.) Id. Because "[m]ental states . . . exist only with reference to particular results . . . it is necessary to examine the mental state element as it arises in each particular statute defining an offense to determine whether actual inconsistency exists." (Internal quotation marks omitted.) *State* v. *Nash*, 316 Conn. 651, 668, 114 A.3d 128 (2015).

Similar to the defendant in the present case, the defendant in *Alicea* claimed that the verdict finding him guilty of both intentional assault and reckless assault was legally inconsistent "because [the] requisite mental states—intentional and reckless—are mutually exclusive," and "it was impossible for the jury to find both mutually exclusive mental states with respect to only one act, one victim, and one injury." *State* v. *Alicea*, supra, 339 Conn. 390. We rejected the defendant's claim, explaining that " '[t]he relevant inquiry . . . is whether the opposing mental states relate to the same result, not whether both convictions relate to the same injury.' . . . The word 'result' in this context referred to the result *of the requisite mental state*, or, in other words, the statutory objective associated with the respective mental state." (Citation omitted; emphasis in original.) Id., 396. Thus, the relevant inquiry is not "whether the statutes at issue require findings that the defendant caused the same injury to the victim. Rather . . . [the convictions] are legally inconsistent only if they require that the defendant possess the opposing mental states with respect to the same *objective* . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 396–97.

We held in *Alicea* that the defendant's conviction of intentional assault and reckless assault was not legally inconsistent because the objective associated with the different mental state elements of the two statutory provisions were not mutually exclusive. We explained that "[t]he jury reasonably could have found that the defendant simultaneously possessed both [intentional and reckless] mental states pertaining to his singular action of cutting [the victim's] throat. In other words, the jury reasonably could have found that the defendant intended to cause [the victim] serious physical injury and simultaneously disregarded the risk that his conduct would cause [the victim's] death." Id., 394; see

*State* v. *Nash*, supra, 316 Conn. 666 (defendant's conviction of intentional and reckless assault in first degree was not legally inconsistent because jury reasonably could have found that defendant intended to injure another person and recklessly created risk of that person's death).

To resolve the defendant's claim in the present case, we must analyze whether the crimes of intentional manslaughter and reckless manslaughter require the defendant to possess opposing mental states with respect to the same statutory objective. Section 53a-55 (a) (1) provides in relevant part that a person is guilty of intentional manslaughter in the first degree when, "[*w*]*ith intent to cause serious physical injury to another person*, he causes the death of such person or of a third person . . . ." (Emphasis added.) Thus, to find the defendant guilty of intentional manslaughter, the jury was required to find that the defendant (1) had the intent to cause serious physical injury to a person, and (2) caused the death of such person or a third person.

Section 53a-55 (a) (3) provides in relevant part that a person is guilty of reckless manslaughter in the first degree when, "*under circumstances evincing an extreme indifference to human life*, *he recklessly engages in conduct which creates a grave risk of death* to another person, and thereby causes the death of another person." (Emphasis added.) Thus, to find the defendant guilty of reckless manslaughter, the jury was required to find that the defendant (1) acted under circumstances evincing an extreme indifference to human life, (2) recklessly engaged in conduct that created a grave risk of death to another person, and (3) caused the death of another person.

We agree with the Appellate Court that "the mens rea elements in the two provisions, namely, the 'intent to cause serious physical injury' and 'recklessly engag-[ing] in conduct which creates a grave risk of death'; General Statutes § 53a-55 (a) [(1) and (3)]; do not relate to the same result." *State* v. *Daniels*, supra, 191 Conn. App. 48–49. As we explained in part I B of this opinion, subdivision (1) of § 53a-55 (a) does not require the jury to find a specific mental state as to the risk of death—it requires only that the jury find a particular mental state as to the element of serious physical injury. See footnote 9 of this opinion and accompanying text. Subdivision (3), by contrast, specifies a particular mental state as to the risk of death—it requires the jury to find that the defendant was reckless with respect to the grave risk of death resulting from her conduct. Accordingly, as the Appellate Court correctly concluded, the jury consistently could have found that the defendant "*specifically intended to cause serious physical injury to Agyei* and that, in doing so, she *consciously disregarded* a substantial and unjustifiable risk *that her actions created a grave risk of death to Agyei*." (Empha-

sis in original.) *State* v. *Daniels*, supra, 49. Because the jury reasonably could have found that the defendant possessed both mental states simultaneously, we agree with the Appellate Court that the defendant's conviction of intentional manslaughter and reckless manslaughter was not legally inconsistent.[11]

B

### Intentional Manslaughter and Criminally Negligent Operation

The defendant also claims that her conviction of intentional manslaughter and criminally negligent operation is inconsistent because the "[d]efendant could not have intended to cause serious physical injury while simultaneously failing to perceive a risk of death." We again disagree.

We have already explained that § 53a-55 (a) (1) provides that a person is guilty of intentional manslaughter in the first degree when, "[w]*ith intent to cause serious physical injury* to another person, he causes the death of such person or of a third person . . . ." (Emphasis added.) In order to find the defendant guilty of intentional manslaughter, we repeat, the jury was required to find that the defendant (1) had the intent to cause serious physical injury to a person, and (2) caused the death of such person or of a third person. Section 53a-57 (a), which established the offense of criminally negligent operation, provides that "[a] person is guilty of misconduct with a motor vehicle when, with *criminal negligence* in the operation of a motor vehicle, he causes the death of another person." (Emphasis added.) "Criminal negligence" is defined in relevant part as "fail[ing] to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ." General Statutes § 53a-3 (14). To find the defendant guilty of criminally negligent operation, the jury was required to find that (1) she failed to perceive a substantial and unjustifiable risk that the manner in which she operated her vehicle would (2) cause the death of another person.

We agree with the Appellate Court that the mental state requirements for these two statutes are not mutually exclusive. As the Appellate Court cogently explained, "[o]ne can intend to cause serious physical injury to another, while, at the same time, [fail] to perceive a substantial and unjustifiable risk that the manner in which she operated her vehicle would cause the victim's death. The mental state elements in the two provisions—*failing to perceive a substantial and unjustifiable risk that your manner of operation would cause death* and an *intent to cause serious physical injury*—do not relate to the same result. Because the defendant's

[conviction] of intentional manslaughter and criminally negligent operation required the jury to find that the defendant acted intentionally and criminally negligent with respect to different results *(failing to perceive a substantial and unjustifiable risk of death* and *intending to cause serious physical injury)*, the defendant cannot prevail on her claim that the mental states required for those crimes are mutually exclusive and, therefore, that the [verdict was] legally inconsistent." (Emphasis altered.) *State* v. *Daniels*, supra, 191 Conn. App. 50–51.

The defendant claims that the Appellate Court's analysis relied on "an overly technical application of the test of legal inconsistency" and that, realistically speaking, it is impossible to intend to cause serious physical injury while simultaneously failing to perceive a risk of death. Not so. As we explained in *Alicea*, "§ 53a-3 (4) does not limit its definition of 'serious physical injury' to an injury that creates a substantial risk of death; rather, it continues, '*or* which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . .'" (Emphasis in original.) *State* v. *Alicea*, supra, 339 Conn. 397–98 n.4, quoting General Statutes § 53a-3 (4). The statute therefore encompasses injuries that do not necessarily create a risk of death. See, e.g., *State* v. *Ovechka*, 292 Conn. 533, 547, 975 A.2d 1 (2009) (person sprayed with pepper spray suffered "serious physical injury," as defined by § 53a-3 (4)); *State* v. *Irizarry*, 190 Conn. App. 40, 48, 209 A.3d 679 (fractured jaw, "contusions, abrasions, and bleeding from [the victim's] ear" constitute " 'serious physical injury' "), cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019). It is possible to intend to cause "serious physical injury," as defined by § 53a-3 (4), while, at the same time, fail to perceive a risk of death. For this reason, we conclude that the jury's verdict of guilty as to the crimes of reckless manslaughter and criminally negligent operation was not legally inconsistent.

The judgment of the Appellate Court is reversed as to the remedy for the jury's inconsistent verdict only and the case is remanded to that court with direction to remand the case to the trial court with direction to reinstate the defendant's intentional manslaughter conviction, to sentence the defendant on that count, and to resentence the defendant on the remaining counts of conviction; the judgment of the Appellate Court, including the vacating of the defendant's conviction of reckless manslaughter and criminally negligent operation, is otherwise affirmed.[12]

In this opinion the other justices concurred.

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when (1) [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances

evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] The defendant also was convicted of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a). The defendant's conviction of these crimes is not at issue in the present appeal.

[4] Defense counsel objected to the state's motion to vacate the intentional manslaughter conviction, arguing that the defendant wanted to preserve her due process claim on appeal that the state had overcharged the case by adding the intentional manslaughter count "on the eve of trial . . . ."

[5] On the reckless manslaughter count, the trial court imposed a sentence of twenty years of incarceration, execution suspended after sixteen years, and five years of probation. The defendant also was sentenced to five years of incarceration for criminally negligent operation, ten years of incarceration for risk of injury to a child, and ten years of incarceration for evasion of responsibility. All of the defendant's sentences run concurrently.

[6] The defendant also claimed that the trial court improperly failed to exclude testimonial hearsay in violation of her constitutional right to confrontation. See *State* v. *Daniels*, supra, 191 Conn. App. 53–54. The Appellate Court declined to review the defendant's unpreserved evidentiary claim on the ground that it was not of constitutional magnitude. Id., 54; see *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*). That issue is not before us on appeal.

[7] During oral argument before the Appellate Court, the state conceded that, if both strikes to Agyei's vehicle are viewed as one continuous act, the mental state elements of reckless manslaughter and criminally negligent operation are mutually exclusive. See *State* v. *Daniels*, supra, 191 Conn. App. 51. The state argued, however, that the jury could have found each strike of Agyei's vehicle to be a separate and distinct act and, therefore, that the jury's verdict as to both crimes was not legally inconsistent. Id. The Appellate Court rejected the state's argument on the ground that the state consistently had argued at trial that both strikes of Agyei's vehicle were one continuous act and could not change its theory of the case on appeal. Id. The state does not challenge the Appellate Court's conclusion on this point in the present appeal.

[8] We need not decide whether the defendant's conviction of intentional manslaughter and reckless manslaughter would actually violate the double jeopardy clause because that issue is not presented on appeal. Suffice it to say that the state's concern in this regard was not unreasonable in light of our case law holding that it violates the prohibition against double jeopardy to convict the defendant of multiple homicide crimes for the death of one victim. See, e.g., *State* v. *Miranda*, supra, 317 Conn. 747 ("the imposition of cumulative punishments for the homicide offenses of capital felony and felony murder violates constitutional protections against double jeopardy if those offenses arise from the killing of a single victim"); *State* v. *Chicano*, 216 Conn. 699, 710, 584 A.2d 425 (1990) ("intentional murder, felony murder, and manslaughter in the first degree are all homicide offenses," and, therefore, defendant's conviction of felony murder and first degree manslaughter for death of single victim violates double jeopardy prohibition) (overruled on other grounds by *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013)), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); *State* v. *John*, 210 Conn. 652, 696, 557 A.2d 93 ("the legislature contemplated that only one punishment would be imposed for a single homicide, even if that homicide involved the violation of two separate statutory provisions"), cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), and cert. denied sub nom. *Seebeck* v. *Connecticut*, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). Thus, we credit the state's explanation regarding the reason for requesting the vacatur of the defendant's intentional manslaughter conviction.

[9] The intent to cause "serious physical injury" is a required element under § 53a-55 (a) (1), and proof that the defendant intended to cause a "physical injury [that] creates a substantial risk of death" is one of four ways to establish that element. General Statutes § 53a-3 (4); see General Statutes § 53a-3 (4) (" '[s]erious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ"). Because of these statutory alternatives, the jury in the present case was free to find the defendant guilty of intentional manslaughter without

finding that she had any particular state of mind with respect to the risk of death created by her actions.

[10] The defendant also claims that the state is pursuing a different legal theory on appeal than the one it pursued at trial, in violation of her right to notice of the charges against her. See, e.g., *State* v. *King*, 321 Conn. 135, 149, 136 A.3d 1210 (2016) ("[p]rinciples of due process do not allow the state, on appeal, to rely on a theory of the case that was never presented at trial"). Specifically, the defendant claims that the state's legal "theory of the case at trial was that the defendant could be found guilty of . . . only one of the three" crimes predicated on Agyei's death, whereas, on appeal, the state now argues that the defendant can be convicted "of all three charges . . . ." The defendant misunderstands the state's legal theory on appeal. The state does not challenge the Appellate Court's conclusion that the defendant's conviction of reckless manslaughter and criminally negligent operation is inherently inconsistent and, therefore, must be reversed. The state challenges only the remedy ordered by the Appellate Court to cure the inconsistency, arguing that reinstatement of the defendant's intentional manslaughter conviction is appropriate because the defendant's intentional manslaughter conviction is unaffected by the inconsistency in the jury's verdict, and the jury expressly found that the state had proven the essential elements of intentional manslaughter beyond a reasonable doubt. Because it is undisputed that the defendant was on notice that she could be convicted of intentional manslaughter, we conclude that the defendant's due process claim lacks merit.

[11] The defendant also contends that this case is distinguishable from *Nash*, supra, 316 Conn. 651, and *State* v. *King*, 321 Conn. 135, 136 A.3d 1210 (2016) (*King 2016*), insofar as those cases involved two different results to the victim, whereas the present case involves only one result. Our holding in *Alicea* is dispositive of this claim. As we reasoned in *Alicea*, the outcomes of *Nash* and *King 2016* "actually hinged on the *objective* associated with each statutory, mental state element, not the acts performed by the defendants or the injuries suffered by the victims." (Emphasis in original.) *State* v. *Alicea*, supra, 339 Conn. 397. Similar to both *Nash* and *King 2016*, the defendant's actions in the present case related to two different results— serious physical injury and the risk of death—and the jury reasonably could have found that the defendant possessed a distinct mental state with respect to each of these results.

[12] In accordance with the aggregate package theory, we vacate the defendant's sentence in its entirety and remand not only for sentencing on the intentional manslaughter conviction, but also for resentencing on the convictions that were not vacated by the Appellate Court, namely, risk of injury to a child and evasion of responsibility in the operation of a motor vehicle. See, e.g., *State* v. *LaFleur*, 307 Conn. 115, 164, 51 A.3d 1048 (2012) ("Pursuant to [the aggregate package] theory, we must vacate a sentence in its entirety when we invalidate any part of the total sentence. On remand, the resentencing court may reconstruct the sentencing package or, alternatively, leave the sentence for the remaining valid conviction or convictions intact." (Internal quotation marks omitted.)).

---